UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DIRECTORS OF THE OHIO CONFERENCE OF PLASTERERS & CEMENT MASONS COMBINED FUNDS, INC., | ) ) ) ) ) | CASE NO. 5:16-cv-1674 |
| PLAINTIFF, | ) ) | JUDGE SARA LIOI |
| vs. | ) ) ) ) | MEMORANDUM OPINION AND ORDER |
| AKRON INSULATION AND SUPPLY, INC., | ) ) ) | |
| DEFENDANT. | ) | |

The Court previously denied the motion of plaintiff Directors of the Ohio Conference of Plasterers & Cement Masons Combined Funds, Inc. ("plaintiff") for default judgment against defendant Akron Insulation and Supply, Inc. ("defendant"), and ordered plaintiff to show cause why this case should not be dismissed. (*See* Doc. No. 12 (Memorandum Opinion and Order ["MOO"]).) Now before the Court is plaintiff's response to the Court's show cause order. (Doc. No. 13 ["Resp."].)

**A. Background**

The background of this case is detailed in the Court's ruling denying the motion for default judgment, and familiarity therewith is assumed. But in order to provide context, that background is briefly summarized here.

On June 30, 2016, plaintiff filed suit against defendant pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001, *et seq.*, and

Section 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), for violating a collective bargaining agreement by failing to make fringe benefit contributions. (Doc. No. 1 ["Compl."] ¶ 1.) Plaintiff asserts six claims for relief. (*Id*. ¶¶ 5-44.) A collective bargaining agreement signed by defendant is attached as Exhibit A to the complaint. (Doc. No. 1-2 ["CBA"].) The time period covered by the CBA is June 1, 2007 to May 31, 2010. (*See* CBA at 13.[1]) Defendant did not answer or otherwise respond to the complaint, and default was entered. (Doc. No. 9.)

Plaintiff argues in the motion for default judgment that defendant failed to file reports and make timely contributions under the CBA for the months of "October 2014, December 2014, January 2015, March 2015 through May 2015, August 2015, September 2015, November 2015, and December 2015[,]" and seeks an order requiring defendant to submit to an audit from January 1, 2014 to present, as well as attorney fees and costs in the amount of $5,142.00. (*See* Doc. No. 10 ["Mot."] at 110-113.) Defendant did not oppose the motion.

The Court construed defendant's admission to the facts alleged in the complaint as a result of its default to pertain to the CBA attached to the complaint, which did not on its face cover time periods in 2014, 2015, and beyond. Thus, the Court denied the motion because plaintiff failed to show it is entitled to default judgment against defendant for breach of a collective bargaining agreement in 2014 and 2015, or entitled to an audit from

---

[1] All page number references are to the page identification numbers generated by the Court's electronic filing system.

January 1, 2014 to present. Plaintiff was granted leave to show cause why this case should not be dismissed. (MOO at 128.)

**B. Plaintiff's Response to the Show Cause Order**

In response to the show cause order, plaintiff argues that the allegations in the complaint support the default judgment sought from 2014 to present even though the CBA attached to the complaint covers the time period 2007-2010. Plaintiff advances four points in support.

First, plaintiff maintains that it "pleaded that Defendant was bound by a CBA at 'all times relevant herein,' plainly referring to the dates of contractual breaches, which included dates in 2014 and 2015." (Resp. at 131.) As an initial matter, defendant's default does not establish as true conclusory allegations. *Thirty Eight St., Inc. v. Chatur Corp.*, No. 1:08CV716, 2009 WL 10689657, at *4 (N.D. Ohio Aug. 10, 2009) ("[A] default does not establish as true any conclusory allegations in the complaint.") (citing *Flagstar Bank, FSB v. Caribbean Mort. Corp.*, No. CV08-2108, 2009 WL 910835, at *3 (E.D.N.Y. Mar. 12, 2009)). The complaint does not contain factual allegations that, if admitted by defendant because of default, result in the conclusion that defendant was bound by the CBA during the period of time for which plaintiff seeks default judgment.

Moreover, the complaint alleges that defendant was bound by a specific collective bargaining agreement—the CBA attached to the complaint as Exhibit A. All six counts begin with the allegation: "For all times relevant herein, Defendant was a party to and agreed to abide by the terms of a Collective Bargaining Agreement ("CBA") (**Exhibit A**)." (Compl. ¶¶ 6, 13, 20, 25, 30, 38 (emphasis in original).) The CBA attached to the complaint as Exhibit A covers the time period from June 1, 2007 to May 31, 2010, and

shows that defendant is a signatory to that agreement. (CBA at 13, 30.) There are no factual allegations in the complaint that defendant was bound by a collective bargaining agreement other than the agreement attached to the complaint, or that the CBA remained in effect for the time periods at issue. The only reference to 2014 and 2015 in the complaint appears in counts V and VI, alleging that "[f]or the periods of October 2014, December 2014, January 2015, March 2015 through May 2015, August 2015, September 2015, November 2015, and December 2015, Defendant failed to timely pay contributions." (*See* Compl. ¶¶ 33, 41.)

With respect to those allegations in counts V and VI, plaintiff argues that "[a]s noted in [the] Complaint, Defendant continued to make its monthly contributions after June 1, 2010. In the Complaint, it is alleged that for the months of October 2014, December 2014, January 2015, March 2015 through May 2015, August 2015, September 2015, November 2015, and December 2015, Defendant did not timely remit their fringe benefit contributions that provide earned benefits for employees of Defendant." (Resp. at 134, citing Compl. at ¶ 33.) According to plaintiff, "*[i]t is implicit in that allegation and the related request for relief that the Defendant did eventually remit the actual contributions*, but Defendant did so after the contributions' due date, causing liquidated damages to accrue. This means that at a minimum, Defendant remitted contributions through December 2015, four and a half years after the June 1, 2010 date in the CBA. Defendant's course of performance indicates that it was Defendant's understanding that its obligations from the CBA continued to be in effect well after the June 1, 2010 date." (*Id*. at 135 (emphasis added).) But plaintiff's argument that defendant eventually remitted the contributions for the 2014 through December 2015 time period appears to be

4

contradicted by the affidavit of Tim Myers, administrator for plaintiff Funds. (Doc. No. 10-1 ["Myers Aff."].) According to Myers, defendant has not paid the contributions for this period. (*See id.* ¶¶ 3-6.) Myers does aver, however, that defendant paid liquidated damages in the amount of $2,654.12 for the months of October 2014, December 2014, January 2015, March 2015 through May 2015, August 2015, September 2015, November 2015, and December 2015. (*Id.*)

Next, plaintiff contends that even though the CBA is dated June 1, 2007 to May 31, 2010, it contains an evergreen clause in Article XIII, which states that

> This Agreement represents a complete and final understanding on all bargain able (sic) issues between the Employer and the Union, and it shall be effective as of June 1, 2007, and remain in full force and effect, with any modifications and/or amendments, until June 1, 2010, *and thereafter from year to year unless sixty (60) days prior to said expiration date, or any anniversary date thereof, either party gives timely written notice to the other of an intent to terminate or modify any or all provisions.*

(Resp. at 132, quoting Doc. 1-2 at 29 (emphasis added in Response).)

Plaintiff argues that the evergreen clause is valid and, "[a]bsent any notice of termination, Defendant's obligations under the CBA continue in full effect. Defendant has provided no notice of termination. Plaintiffs relied on the evergreen clause in their Complaint and Motion for Default Judgment, when they requested that an audit be conducted for the period of January 1, 2014 through current." (*Id.* at 133.) While plaintiff makes this argument, the complaint contains no allegations regarding the evergreen clause, or any allegation that defendant has not terminated or modified its participation in the CBA up until the present time.

Finally, plaintiff maintains that defendant signed a Memorandum of Understanding ("MOU") obligating itself to the CBA, and the MOU does not limit the

5

term of the CBA. The MOU provides that defendant agrees to be bound by the current terms of the CBA (dated June 1, 2002 to June 1, 2007) and the new CBA "effective June 1st, 2007 and remaining in effect until May 31st, 2010." (Doc. No. 1-2 at 31 ¶¶ 1, 2.) Plaintiff contends that the language in the MOU "is merely descriptive of the CBA to which the Memorandum assents, rather than providing temporal limitations on the duration of the agreement. Moreover, the Memorandum goes on to state, in reference to the 2007-2010 CBA, that '[t]here will be no language changes.' . . . This provision signals the Parties' intent to be bound by the language of the CBA, unless otherwise directly and specifically changed via the Memorandum. As there is no specific stated desire to limit the term of the CBA in the Memorandum, the [evergreen] language in the CBA should control." (Resp. at 133-34.) As discussed above, however, the complaint contains no allegations concerning the evergreen clause or defendant's actions thereunder.

**C. Analysis**

### 1. Plaintiff has satisfied the show cause order—default judgment granted as to liability

As a consequence of default, defendant is deemed to have admitted all of the well-pleaded allegations in the complaint pertaining to liability. (*See* MOO at 127-28 (citations omitted).); *Kwik-Sew Pattern Co. v. Gendron*, No. 1:08-CV-309, 2008 WL 4960159, at *1 (W.D. Mich. Nov. 19, 2008) (citing, *inter alia*, *Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 110-11 (6th Cir. 1995)). But defendant's default does not automatically entitle plaintiff to relief. The Court must consider whether the admitted allegations in the complaint, and reasonable inferences derived therefrom, are sufficient to satisfy the elements of plaintiff's claims for breach of contract and ERISA and LMRA violations.

*See Zinganything, LLC v. Imp. Store*, 158 F. Supp. 3d 668, 672 (N.D. Ohio 2016) (Even though defendant has defaulted, the Court must determine whether factual allegations accepted as true state a claim for relief with respect to plaintiff's intellectual property claims for which the plaintiff seeks default judgment.) (citation omitted); *Kwik-Sew Pattern Co.*, 2008 WL 4960159, at *1 ("[A] court may not enter default judgment upon a legally insufficient claim.") (citations omitted); *see also Flanagan v. Marco Martelli Assocs., Inc.*, No. 13-CV-6023 (ADS) (AKT), 2015 WL 1042279, at *4 (E.D.N.Y. Mar. 9, 2015) ("The fact that a complaint remains unanswered will not suffice to establish liability on its claims since a default does not establish conclusory allegations, nor does it excuse any defects in the plaintiff's pleading.") (internal quotation marks and citation omitted).

In order to be entitled to default judgment, the complaint must contain either direct or reasonable inferential factual allegations deemed admitted by defendant's default that are sufficient for each claim for relief. *See Kwik-Sew Pattern Co,*, 2008 WL 4960159, at *1 (citing *DIRECTV, Inc. v. Huynh,* 318 F. Supp. 2d 1122, 1127 (M.D. Ala. 2004)); *see also K.N.J., Inc. v. Ames-Granite*, No. 15-CV-02009-PAB-KMT, 2017 WL 1133431, at *2 (D. Colo. Mar. 27, 2017) (analogizing the requirements a complaint must satisfy on default judgment to a motion to dismiss) (quoting *Bryson v. Gonzales*, 534 F.3d 1282, 1286 (10th Cir. 2008)). Whether to grant default judgment is left to the sound discretion of the court. *Hollis v. Howard*, No. 16-5115, 2016 WL 9804159, at *2 (6th Cir. Dec. 21, 2016) ("'The district court's decision not to grant a default judgment is reviewed for an abuse of discretion.'") (quoting *Lincoln v. Comm'r of Soc. Sec.*, 62 F. App'x 93, 94 (6th Cir. 2003)).

In order for plaintiff to succeed on its motion for default judgment, the complaint must make either direct or inferential allegations that defendant agreed to be bound by a collective bargaining agreement requiring fringe benefit contributions for the time periods for which plaintiff seeks default judgment. Plaintiff's primary argument in response to the show cause order is that defendant is bound by the CBA from January 2014 through present by operation of the CBA's evergreen clause.

It is true that, absent the required notice by defendant regarding modification or termination of the CBA, the CBA's evergreen clause automatically continues to obligate defendant to the terms of that agreement. *Orrand v. Scassa Asphalt, Inc.*, 794 F.3d 556, 565 (6th Cir. 2015) ("'When a contract is renewed via the operation of an evergreen clause, all of the attendant contractual obligations naturally continue for the period of renewal.'") (quoting *Trustees of the B.A.C. Local 32 Ins. Fund v. Fantin Enters., Inc.*, 163 F.3d 965, 968-69 (6th Cir. 1998)). But the complaint contains no allegations concerning the evergreen clause from which the Court could infer that the CBA remains binding upon defendant. It is not the Court's responsibility to search the record or to make arguments for plaintiff in order to satisfy all of the elements necessary for recovery of default judgment on its claims. *See Bricklayers & Trowel Trades Int'l Pension Fund v. Denver Marble Co.*, No. 16-CV-02065-RM, 2017 WL 4278493, at *2 (D. Colo. Sept. 27, 2017) ("[I]it is not the obligation of the Court to piece together the parties' arguments.") (citing *Mitchell v. City of Moore*, 218 F.3d 1190, 1199 (10th Cir. 2000) ("The district court was not obligated to comb the record in order to make [plaintiff's] arguments for him.")). Plaintiffs could have, and should have, made proper factual allegations in the complaint concerning the existence of the CBA's evergreen clause and whether the

defendant remained bound by the CBA for the time periods for which plaintiff seeks default judgment.

That said, although not mentioned in the complaint, plaintiff's response to the show cause order directed the Court to the evergreen clause in the CBA (which is attached to the complaint) and, in light of the Myers' affidavit that defendant paid plaintiff liquidated damages in the amount of $2,654.12 for the months of October 2014, December 2014, January 2015, March 2015 through May 2015, August 2015, September 2015, November 2015, and December 2015 (Myers Aff. ¶¶ 3-6), the Court can infer from the complaint and attachments thereto that defendant was bound by the CBA through December 2015. Similarly, considering the evergreen clause and Myers' affidavit averring that defendant failed to submit to a required audit from January 1, 2014 to present despite repeated requests (Myers Aff. ¶ 7), the Court can also infer that it appears defendant continues to be bound by the CBA at the present time.

The Court's order denying plaintiff's motion for default judgment as to defendant's liability is VACATED. Federal Rule of Civil Procedure 55(b) governs the entry of default judgment. Rule 55(b) provides that default judgment may be entered against a defendant who is neither a minor nor an incompetent person. According to the complaint, defendant has at all relevant times represented itself to be a corporation licensed to conduct business in Ohio with its principal place of business in Akron Ohio, and is an employer as defined by ERISA. (Compl. ¶ 4.) As a business entity, defendant is not a minor, incompetent person, or subject to the Soldiers and Sailors Relief Act of 1940. *Zinganything, LLC v. Tmart UK Ltd.*, No. 5:14-CV-629, 2016 WL 362359, at *2 (N.D. Ohio Jan. 29, 2016) (citation omitted). For all of the foregoing reasons, the Court

exercises its discretion under Fed. R. Civ. P. 55(b) to grant default judgment as to liability in favor of plaintiff and against defendant. *See* 10A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2685 (3d ed.1998) (footnotes omitted).

### 2. Damages

The well-pleaded allegations in a complaint are taken as true as to liability when a defendant is in default, but not as to damages. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 848 (E.D. Mich. 2006) (citing *Thomson v. Wooster,* 114 U.S. 104, 5 S. Ct. 788, 29 L. Ed. 105 (1885); *Antoine v. Atlas Turner, Inc.,* 66 F.3d 105, 110-11 (6th Cir. 1995)). Rule 55(b)(2) permits, but does not require, the district court to conduct an evidentiary hearing to determine damages. *Arthur v. Robert James & Assoc. Asset Mgmt., Inc.*, No. 3:11-cv-460, 2012 WL 1122892, at *1 (S.D. Ohio Apr. 3, 2012) (quoting *Vesligaj v. Peterson*, 331 F. App'x 351, 354-55 (6th Cir. 2009)). The Court may rely on affidavits submitted by plaintiff in support of damages without the need for a hearing. *Id.* at *2 (citations omitted).

Plaintiff submitted the affidavit of Myers in support of damages. According to Myers' affidavit, a payroll audit is required in order to determine the amount of fringe benefit contributions owed by defendant pursuant to the CBA for the time period from January 1, 2014 to present. Because of the need for an audit, plaintiff does not seek default judgment with respect to a specific amount of damages, but an order requiring defendant to submit to an audit so that plaintiff may determine the amount due and owing in unpaid contributions under the CBA. The Court will grant plaintiff's motion requiring defendant to submit to an audit of its books and records in order to determine its

obligations under the CBA from January 1, 2014 to present. Any such audit must be completed by June 29, 2018, and defendant is ordered to timely cooperate with plaintiff therewith.

Plaintiff also requests default judgment for an unknown amount of damages that is determined to be due and owing from the audit, including liquidated damages, interest, and the cost of the audit. (Mot. at 113.) The Court will not grant judgment to plaintiff for indeterminate damages. *Bell v. Zurich Am. Ins. Co.*, 156 F. Supp. 3d 884, 889 (N.D. Ohio 2015) ("When the amount of damages to be awarded pursuant to a default judgment is uncertain, the court must make further inquiry. Fed. R. Civ. P. 55(b)(2). It may do so through oral testimony at an evidentiary hearing, or through the submission of affidavits and other materials."). If as a consequence of the audit plaintiff determines the sum of damages owed, plaintiff may file a properly supported supplemental motion for damages no later than July 27, 2018.

### 3. Attorney fees and costs

Plaintiff is entitled to reasonable attorney fees and costs pursuant to the CBA and 29 U.S.C. § 1132(g)(2)(D). Attorney fees are calculated using the "lodestar" method, which is determined by multiplying the number of hours reasonably expended on this litigation by a reasonable hourly rate. *See Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983); *Building Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995). The lodestar

calculaion can be adjusted by consideration of a number of factors.[2] *Hensley*, 461 U.S. at 430, n.3.

Plaintiff seeks attorney fees in the amount of $4,532.50 and costs in the amount of $609.50. In support, plaintiff submits the affidavit of Attorney Joshua Hippenmeyer ("Hippenmeyer"), one of plaintiff's attorneys. (Doc. No. 10-2 [Hippenmeyer Aff."].) Hippenmeyer avers that the amount of attorney fees and costs requested have been incurred by the firm. (*Id*. ¶ 2.) The affidavit includes no information or documentation regarding the costs, counsel's hourly rate, or counsel's billing records containing the number of hours expended for this case.

In the absence of any documentation that would allow the Court to determine the reasonableness of plaintiff's request for fees and costs, the motion in that respect is denied at this time. Plaintiff may resubmit its request for attorney fees and costs, with proper documentation and a lodestar analysis, at the same time plaintiff submits supplemental documentation of damages by July 27, 2018.

**C. Conclusion**

For all of the foregoing reasons, the Court's order denying plaintiff's motion for default judgment is vacated. Plaintiff's motion for default judgment as to liability is granted, as is plaintiff's motion on the issue of requiring defendant to submit to an audit as described herein. Defendant is ordered to cooperate with plaintiff in order to complete the audit by June 29, 2018.

---

[2] These factors include: (1) time and labor; (2) difficulty of the case; (3) skill necessary; (4) the extent the attorney is precluded from working on other matters; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) the time limitations; (8) the amount involved and the results obtained; (9) the attorney's experience, reputation and ability; (10) the undesirability of the case; (11) the nature and length of the attorney-client relationship; and (12) awards in similar cases.

The motion is denied with respect to damages and attorney fees and costs. Plaintiff shall submit any evidentiary support of damages and attorney fees and costs by July 27, 2018. If such support is not submitted by July 27, 2018, the Court will schedule an evidentiary hearing.

**IT IS SO ORDERED**.

Dated: May 8, 2018

**HONORABLE SARA LIOI
UNITED STATES DISTRICT JUDGE**