# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DIRECTORS OF THE OHIO CONFERENCE OF PLASTERERS & CEMENT MASONS COMBINED FUNDS, INC., | ) ) ) ) ) | CASE NO. 5:16-CV-1674 |
| PLAINTIFFS, | ) ) | JUDGE SARA LIOI |
| v. | ) ) | **MEMORANDUM OPINION** |
| AKRON INSULATION AND SUPPLY, INC., | ) ) ) ) | |
| DEFENDANT. | ) | |

In this action to recover unpaid employee benefit contributions, plaintiffs Directors of the Ohio Conference of Plasterers & Cement Masons Combined Funds, Inc. ("plaintiffs") have filed a request for an award of costs and attorney fees against defendant Akron Insulation and Supply, Inc. ("defendant"). (Doc. No. 21, Notice of Damages and Costs ["Not."].) For the reasons set forth below, the Court enters final judgment in favor of plaintiffs and awards plaintiffs $16,330.00.

## I.    BACKGROUND

Plaintiffs are the "Directors of the entity responsible for collections for various employee benefit plans[.]" (Doc. No. 1, Complaint ["Compl."] ¶ 3.) On June 30, 2016, plaintiffs filed suit against defendant, pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 100, *et seq.*, and § 301(a) of the Labor Management Relations Act of 1947 ("LMRA"), 29 U.S.C. § 185(a), for violating a collective bargaining agreement by failing

to make fringe benefit contributions. (Compl. ¶ 1.) After defendant failed to answer or otherwise respond to the complaint, plaintiffs applied to the Clerk for an entry of default, and the Clerk entered default against defendant on August 24, 2016. (Doc. No. 9.)

Plaintiffs subsequently moved for default judgment against defendant and for an order requiring an audit of defendant's books to determine the amount of unpaid contributions due. (Doc. No. 10.) In a May 8, 2018 order, the Court granted the motion for default judgment as to liability and ordered defendant to submit to a financial audit by June 29, 2018, to determine the amount of unpaid contributions due under the collective bargaining agreement.[1] (Doc. No. 14.)

Defendant failed to cooperate timely to accomplish the audit and, on July 27, 2018, plaintiffs filed a motion asking the Court to order defendant to show cause as to why defendant had failed to cooperate timely with the financial audit. (Doc. No. 15.) On August 7, 2018, this Court ordered defendant to show cause by August 21, 2018, as to why it should not be held in contempt for its failure to comply with this Court's May 8, 2018 order requiring timely cooperation with plaintiffs to complete a payroll audit of defendant's records. (Doc. No. 16.) On August 27, 2018—after defendant failed to respond by the show cause deadline—this Court extended the deadline to September 12, 2018, for defendant to show cause. (Doc. No. 17.) That same day, the clerk mailed a copy of the Court's order to defendant. (*See* 8/27/18 Docket Entry.)

---

[1] Initially, the Court denied plaintiffs' motion for default judgment, construing plaintiffs' complaint as not covering the time period for which plaintiffs sought damages (2014, 2015, and beyond). (Doc. No. 12 at 128.) In its order denying default judgment, the Court also ordered plaintiffs to show cause as to why the case should not be dismissed. (*Id.*) Following plaintiffs' briefing on the show cause order, the Court vacated its earlier order denying default judgment. (Doc. No. 14 at 149–50.)

On September 25, 2018—after defendant still had not responded to the show cause order—this Court ordered plaintiffs to advise the Court in writing by October 5, 2018, how they planned to proceed. (Doc. No. 18.) On October 5, 2018, plaintiffs filed a status report advising the Court that they had received the necessary information from defendant to complete the audit but that plaintiffs needed more time to calculate and submit to the Court a sum certain total owed by defendant. (Doc. No. 19.) The Court ordered plaintiffs to calculate and submit the sum certain totals owed by defendant no later than November 30, 2018. (Doc. No. 20.)

On November 30, 2018, plaintiffs submitted the instant notice of damages and costs. In their request for cost and fees, plaintiffs submit that the financial audit revealed no outstanding delinquencies. (Doc No. 21-2 ["Eyster Decl."] ¶ 2; Not. at 187.[2]) Nevertheless, plaintiffs request $4,920.00 for the audit, $609.50 for court costs, and $10,800.50 in reasonable attorney fees for a total award of $16,330.00. (Not. at 194.) In support of their request, plaintiffs submit the payroll audit report (Doc. No 21-1), the declaration of David Eyster, CPA (Eyster Decl.), the declaration of Jennie G. Arnold, lead counsel for plaintiffs (Doc. No. 21-3 ["Arnold Decl."]), and the detailed billing ledger for plaintiffs' counsel (Doc. No. 21-4).

This Court now has sufficient materials before it to issue an award and final judgment in favor of plaintiffs pursuant to Fed. R. Civ. P. 55.

## II.    DISCUSSION

Having previously entered default judgment in favor of plaintiffs on the question of liability, the Court turns to plaintiffs' request for costs and fees. ERISA requires an employer to pay multiemployer trust fund contributions according to the terms and conditions of the

collective bargaining agreements and benefit plans to which the employer is a signatory. *See* 29 U.S.C. § 1145. Trust funds, as fiduciaries, are authorized to enforce this requirement. *See* 29 U.S.C. § 1132(a)(3) (providing that a civil action may be brought by a fiduciary to enforce § 1145 or the terms of a plan). Furthermore, ERISA contains a mandatory scheme for remedying unpaid contributions whereby, when a judgment in favor of the plan is awarded, the court *shall* award the plan reasonable attorney's fees and costs. 29 U.S.C. § 1132(g)(2)(D); *see Foltice v. Guardsman Prods., Inc*., 98 F.3d 933, 936 (6th Cir. 1996) ("Under . . . [§ 1132(g)(2)], the award of reasonable attorney fees is mandatory[.]"). "The starting point for determining the amount of a reasonable attorney fee is the 'lodestar' amount, which is calculated by multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate." *Imwalle v. Reliance Med. Prods., Inc*., 515 F.3d 531, 551–52 (6th Cir. 2008) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S. Ct. 1933, 76 L. Ed. 2d 40 (1983)). "Where the party seeking the attorney fees has established that the number of hours and the rate claimed are reasonable, the lodestar is presumed to be the reasonable fee to which counsel is entitled."[3] *Id*. at 552.

The Court begins with the hourly rates charged. To determine a reasonable hourly rate, courts initially assess the "prevailing market rate in the relevant community." *Adcock-Ladd v. Sec'y of Treasury*, 227 F.3d 343, 350 (6th Cir. 2000) (quotation marks, citation, and emphasis

---

[2] All page number references are to the page identification number generated by the Court's electronic docketing system.

[3] After the lodestar amount is determined, a court may make adjustments based on twelve factors: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesirability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3.

omitted); *see Trs. of the N.W. Ohio Plumbers & Pipefitters Pension Plan v. Helm & Assocs., Inc.*, No. 3:10 CV 739, 2012 WL 3619827, at *1 (N.D. Ohio Aug. 21, 2012).

In support of their request for fees, plaintiffs have submitted an affidavit from lead counsel, Jennifer Arnold ("Arnold"). This affidavit sets forth the hourly rates charged by each attorney and paralegal who worked on this case, and the attached billing ledger details the actual work performed by each legal professional.

In her declaration, Arnold states that she graduated from law school in 2006. (Arnold Decl. ¶ 3.) She avers that she has litigated ERISA matters continuously since her admission to the Ohio bar in 2009. (*Id*. ¶ 4.) Further, plaintiffs note that nine years ago, while Arnold was still an associate with her law firm, she was awarded $375 as a reasonable hourly rate for ERISA cases. (Not. at 190 (citing *Robert Adkins v. Special Metals Corp*., No. 09-cv-116-HRW (E.D. Ky. June 10, 2010)).)

For purposes of billing in this case, plaintiffs used an hourly rate of $200 for partners, $185 for associate attorneys, and $85 for paralegals. (Arnold Decl. ¶ 12.) These rates are consistent with rates approved by other courts within the Sixth Circuit. *See, e.g.*, *Helm*, 2012 WL 3619827, at *2 (finding an hourly rate of $300 for partners working on an ERISA case to be reasonable); *Mikolajczyk v. Broadspire Servs., Inc*., 499 F. Supp. 2d 958, 965 (N.D. Ohio 2007) (finding hourly rate of $250 reasonable in an ERISA action); *see also Kauffman v. Sedalia Med. Ctr., Inc*., No. 204-cv-543, 2007 WL 490896, at *3 (S.D. Ohio Feb. 9, 2007) (finding an hourly rate as high as $325 to be reasonable for partners and hourly rates between $210 and $235 to be reasonable for associates in ERISA case). Based upon the relevant case law and the supporting materials filed by plaintiffs, the Court finds that an hourly rate of $200 for partners and $185 for

associates is reasonable. The Court also finds an hourly rate of $85 for the work of paralegals to be reasonable. *See, e.g.*, *Hayden v. Martin Marietta Materials, Inc*., No. 5:11-CV-00116, 2012 WL 5362871, at *8 (W.D. Ky. Oct. 31, 2012) (approving paralegal rates of $100 per hour); *see also Helm*, 2012 WL 3619827, at *2 (approving paralegal rate of $80 per hour).

With respect to the number of hours expended, the fee request includes a total of 61.9 hours, with 15.2 partner hours, 37.9 associate attorney hours, and 8.8 paralegal hours. (Arnold Decl. ¶ 11.) While the financial audit revealed no delinquencies were owed, plaintiffs had no ability to reach that conclusion other than through the audit that was obtained in this suit, an audit defendant did not cooperate in completing timely. Plaintiffs incurred substantial costs as a result of this action, which would have been avoided had defendant submitted to the audit as defendant was bound to do. Further, an underlying award of delinquent contributions is not required for the Court to reach a result that attorney fees are owed. *Bldg. Serv. Local 47 Cleaning Contractors Pension Plan v. Grandview Raceway*, 46 F.3d 1392, 1401 (6th Cir. 1995) ("[I]n ERISA cases, there is no requirement that the amount of an award of attorneys' fees be proportional to the amount of the underlying award of damages.").

After reviewing plaintiffs' counsel's billing records, the Court finds that the billing entries sufficiently describe the work performed and that the hours expended were reasonable and necessary to pursue this action. Moreover, the hourly rates charged by plaintiffs' counsel are reasonable in light of prevailing rates in the relevant market. Accordingly, the Court awards plaintiffs $10,800.50 in attorney fees. Further, plaintiffs are also entitled to audit fees in the amount of $4,920.00 and $609.50 in court fees.

### III.    CONCLUSION

For the aforementioned reasons, the Court enters final judgment in favor of plaintiffs, and awards plaintiffs $16,330.00, representing attorney fees, court fees, and audit fees. This case is closed.

**IT IS SO ORDERED**.

Dated: June 18, 2019

_____
**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**